32 C.C.P.A.(Patents)

### Application of FISHER.

### Patent Appeal No. 4902.

Court of Customs and Patent Appeals.
April 9, 1945.

Frederic P. Warfield, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

From a decision of the Board of Appeals of the United States Patent Office affirming action by the Primary Examiner in finally rejecting claims 1, 4, 10, 11, 12, 16, 20, 21, 24 and 25 of an application for a patent on Automatic Compression Control for Internal Combustion Engines on the ground of lack of invention over the prior art appellant appeals to this Court. Eleven claims were allowed. The appeal as to claim 4 has been withdrawn and will therefore be dismissed.

The references cited are.

Westinghouse, 906,177, December 8, 1908;

McClintock, 922,613, May 25, 1909;

Griesbach (British), 26,338, November 24, 1911;

Cutler, 1,301,658, April 22, 1919;

Henriod (French), 557,969, August 20, 1923;

Redmond, 1,812,983, July 7, 1931;

Hartley, 1,817,747, August 4, 1931;

Wright, 1,891,587, December 20, 1932.

Claim 1 is illustrative of the subject matter and reads as follows:

"1. In an internal combustion engine, a cylinder, a working piston in said cylinder, means exclusive of said working piston to alter the combustion space of said cylinder independently of the movement of said working piston, and means to control said last-mentioned means by the load conditions of said engine."

The invention relates to internal combustion engines comprising a plurality of cylinders with working pistons functioning in conventional fashion. On the upper end of each cylinder is mounted an auxiliary cylinder communicating therewith and pro-

1010

vided with an auxiliary piston. Those pistons are mounted on the eccentrics of a single crankshaft so that movement of the latter causes them to move up and down in unison. The shaft is biased toward the position of the auxiliary pistons at their top position by means of a coil spring, and the pistons are prevented from coming to rest on an upper or lower dead center by means of stops comprising a lug on the crankshaft.

The auxiliary pistons are fitted in their cylinders so that the compressed gases from the main cylinders can leak past, and to insure that equal pressure will be applied to the top of each piston the spaces above them are connected by a passage. The pressure over the auxiliary pistons, while depending upon pressure in the main cylinders, is less than that pressure during the power stroke of the main pistons. Since the main cylinders function successively only one auxiliary piston at a time is exposed to the pressure of the power stroke. The pressure over those pistons causes them to move down as a unit. With increase in the working pressure of the main cylinders the auxiliary pistons rise, thus increasing the effective space of the main cylinders. Should pressure above the auxiliary pistons be more than desired, it may be vented by a safety valve.

The Primary Examiner rejected the claims as unpatentable over any one of the references. The board in its general affirmance relied principally upon the patents to Wright, Redmond and Westinghouse.

The patent to Westinghouse discloses an internal combustion engine comprising a main cylinder and piston with an auxiliary cylinder and piston communicating with and superimposed upon the main cylinder. The piston of the auxiliary cylinder is adapted to recede under the compression and explosion pressure in the main cylinder against the pressure of a restraining fluid which is delivered to the auxiliary cylinder through a pipe. The aperture through which the restraining fluid enters is closed as soon as the auxiliary piston moves up from its lowest position. Therefore, the extent of upward movement by the auxiliary pistons against the pressure of the restraining fluid is in proportion to the pressure in the main cylinder, and when the pressure is great in the main cylinders the auxiliary pistons are moved up higher than they would be under less pressure, thereby enlarging the effective working space of the main cylinders.

The patents to Wright and Redmond disclose internal combustion engines provided with auxiliary pistons in cylinders mounted on a crankshaft and disposed at the top ends of the main cylinders. The shaft is subject to the action of a spring tending to move the pistons in unison in a downward direction while the operating pressure from the main cylinders of the engine urges them upwardly. Therefore, as the pressure from the main cylinders increases the auxiliary pistons are forced upwardly against the action of the spring, thereby making greater the effective volume of the main cylinders.

It may be readily observed with respect to claim 1 that the devices of the Westinghouse, Wright and Redmond patents are directed to an internal combustion engine, cylinders with a working piston in each, and auxiliary pistons and cylinders altering the combustion space of the working cylinders independently of the movement of the working piston. The load conditions disclosed in the patents to Redmond and Wright completely control the position of the pistons by reason of the fact that the springs of the patents impose a constant force upon the auxiliary pistons. It is not necessary to discuss the other references.

Claim 10 differs from claim 1 in that it merely provides for a plurality of cylinders and pistons. The devices of the patents to Wright and Redmond both show such plurality of parts.

Claim 11 adds to the limitations of claim 10 the additional statement that there are "means simultaneously to control all of said expansible means in accordance with the load conditions of said engine." That limitation is met by the patents to Wright and Redmond for the reason that the auxiliary pistons disclosed therein are mounted on and actuated by means of a common crankshaft.

Claim 12 is similar to claim 11 except that it provides for "an auxiliary cylinder closed at its outer end" and "mechanical means to resist movement of each of said [auxiliary] pistons at the ends of the stroke thereof." While none of the cited patents discloses auxiliary cylinders closed at their outer ends, the devices of the Westinghouse, McClintock and Hartley patents

possess fluid-tight auxiliary cylinders and therefore there would be no invention in applying the closed top feature to the devices of the Wright or Redmond patents. As the auxiliary pistons of the Wright or Redmond devices approach dead center the crankshaft opposes mechanical resistance to their movement in precisely the same fashion as is described by appellant.

Claim 16 adds "means to prevent said auxiliary piston from remaining on dead center at either end of its reciprocating movement." As pointed out in the brief of the Solicitor, the spring and plug plunger means disclosed by appellant prevents the auxiliary piston from ever reaching a dead center. If the literal meaning of the added means to that claim is to be considered the disclosure of appellant does not meet it, for the reason that the piston could not remain on dead center unless it finally reached that position. In the Wright device it is apparent that the auxiliary piston cannot reach a dead center. The coil spring regulating the return action of the auxiliary piston in that patent when fully expanded does not permit the piston to reach a dead center at its lower end for the reason that to do so it would be necessary to break the spark plug which would be in its path. Likewise the auxiliary piston of the patent cannot reach dead center at the upper end for the reason that in order to do so the shaft would have to rotate more than 90°, which would be an impossibility for the reason that less rotation would compress the spring "until it was solid."

Claim 20 is quite similar to claim 1, but adds the expression "means to prevent pressures of such a value [developed by explosion in the main cylinder] that detonation will be caused by too high a compression in said combustion space from affecting said pressure utilizing means." It appears to us that the springs disclosed in the Wright and Redmond patents would be so proportioned as to produce this result. Should the above quoted limitation be intended to mean the placing of a venting valve in the structure, it is anticipated by the patent to McClintock.

Claim 21 adds a "means to steady the action" of the control means. This addition we think would be readily met by a dashpot or the like used for retarding sudden movement. Such is conventional. Furthermore, a dashpot, described as a

"check and equalizing device," is shown in the Wright patent.

Claim 24 adds means for preventing excess pressures "comprising a spring pressed valve." Such a valve is shown in the McClintock apparatus.

Claim 25 is more broadly worded than claim 24 but possesses no limitations which would render it patentable over the prior art for the same reasons as stated in connection with claim 24.

 For the reasons heretofore stated, the appeal is dismissed as to claim 4, and the decision of the Board of Appeals as to the other claims is affirmed.

Affirmed.